J-S81031-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DAVID NORMAN WILLIG, SR., | |
| Appellant | No. 1098 MDA 2017 |

Appeal from the Judgment of Sentence June 12, 2017
in the Court of Common Pleas of Berks County
Criminal Division at No.: CP-06-CR-0001138-2014

BEFORE:  PANELLA, J., STABILE, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED APRIL 24, 2018**

Appellant, David Norman Willig, Sr., appeals from the judgment of sentence entered on June 12, 2017, following the revocation of his probation. On appeal, Appellant contends that the evidence was insufficient to sustain the revocation of probation and challenges the discretionary aspects of his sentence.  For the reasons discussed below, we affirm.

We take the underlying facts and procedural history in this matter from the trial court's September 5, 2017 opinion and our independent review of the certified record.

> On July 11, 2014, Appellant was sentenced to three years of probation after pleading guilty to a first degree misdemeanor charge of [b]ad [c]hecks, 18 Pa.C.S.A. [§] 4105(a)(1).  Although

_____

[*] Retired Senior Judge assigned to the Superior Court.

Appellant made a $2,000.00 or $3,000.00 restitution payment to the victim prior to sentencing, he still owed $11,065.25. The sentence order directed Appellant to pay this restitution balance in monthly installments of $200.00 until satisfying the total amount.

On March 20, 2017, a **Gagnon I** hearing was held due to Appellant's failure to pay on fines and costs. At the hearing, it was learned that Appellant had made payments of only $105.00 toward the restitution due and no payments toward costs. A **Gagnon II** hearing was scheduled on the charge of failure to pay on fines, costs, and restitution as directed. After two continuances, the hearing was held on June 12, 2017.

Appellant did not contest the fact that he did not make his restitution payments as ordered. He argued that he did not willfully violate the sentence order; rather, he was unable to pay. He offered a letter from his doctor setting forth a number of medical conditions that he claimed made him unable to work, but yet, he also testified to working odd jobs. He offered a set of bills for utilities and rent that appeared to be current and not in arrears. He acknowledged that he smokes cigarettes, perhaps a pack or pack and a half per week; however, the [trial c]ourt did not find the amount of smoking to be credible. Appellant averred that his only income is public assistance—medical and food stamps, no cash—and sporadic child support from his ex-wife. He has full custody of his 13- and 14-year-old children, and he has temporary custody of and supports four unrelated children aged 11, 15, 16, and 18.

The [trial c]ourt found that while Appellant might not have been purposely avoiding his obligation to pay restitution and costs, he was certainly making conscious choices to spend his money in a way that left nothing for his victim. [It] revoked Appellant's probation and resentenced him to another three years of probation. The [trial c]ourt also ordered Appellant to pay $100.00 per month, instead of the previously ordered $200.00 per month, toward restitution and waived the $40.00 per month supervisory fee. Rather than allowing the matter to continue to languish, a status hearing was scheduled for November 7, 2017[,] to review Appellant's compliance or lack thereof.

Appellant filed a [p]ost-[s]entence [m]otion for reconsideration on June 22, 2017, which the [trial c]ourt denied.

On July 11, 2017, Appellant filed a [n]otice of [a]ppeal. By [o]rder dated July 25, 2017, the [trial c]ourt ordered Appellant to file a concise statement of errors complained of on appeal. [*See* Pa.R.A.P. 1925(b)]. Appellant filed a [c]oncise [s]tatement on August 11, 2017, complaining that the [trial c]ourt abused its discretion in revoking Appellant's probation without finding that Appellant's failure to pay restitution was willful and in imposing an additional three years of probation because the sentence violates the standard norms of the sentencing guidelines. [On September 5, 2017, the trial court filed an opinion. *See* Pa.R.A.P. 1925(a).]

(Trial Court Opinion, 9/05/17, at 1-3).

On appeal, Appellant raises the following questions for our review.

A. Whether the [trial] court abused its discretion in revoking [Appellant's] probation based solely on his inability to pay costs, fees, and restitution, without finding that his failure to pay was willful[?]

B. Whether the [trial] court abused its discretion in imposing an additional three years of probation revocation for a technical violation, because the sentence violates the standard norms of the sentencing guidelines[?]

(Appellant's Brief, at 4).

Appellant first contends that the trial court abused its discretion in revoking Appellant's probation for failure to pay without first making a finding that his failure to pay was willful. (*See id.* at 14-17). We disagree.

The procedures for revoking probation and the rights afforded to a probationer during revocation proceedings are well settled:

[w]hen a parolee or probationer is detained pending a revocation hearing, due process requires a determination at a pre-revocation hearing, a *Gagnon I* hearing, that probable cause exists to believe that a violation has been committed. Where a finding of probable cause is made, a second, more comprehensive hearing, a *Gagnon II* hearing, is

required before a final revocation decision can be made.

The ***Gagnon II*** hearing entails two decisions: first, a "consideration of whether the facts determined warrant revocation." ***Morrissey v. Brewer***, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). "The first step in a ***Gagnon II*** revocation decision . . . involves a wholly retrospective factual question: whether the parolee [or probationer] has in fact acted in violation of one or more conditions of his parole [or probation]." ***Gagnon v. Scarpelli***, 411 U.S. 778, 93 S.Ct. 1756, 1761, 36 L.Ed.2d 656 (1973) (citing ***Morrissey***, ***supra***, 408 U.S. at 484, 92 S.Ct. 2593). It is this fact that must be demonstrated by evidence containing probative value. "Only if it is determined that the parolee [or probationer] did violate the conditions does the second question arise: should the parolee [or probationer] be recommitted to prison or should other steps be taken to protect society and improve chances of rehabilitation?" ***Gagnon v. Scarpelli***, ***supra***, 411 U.S. at 784, 93 S.Ct. 1756, (citing ***Morrissey v. Brewer***, ***supra***, 408 U.S. at 484, 92 S.Ct. 2593, 33 L.Ed.2d 484). Thus, the ***Gagnon II*** hearing is more complete than the ***Gagnon I*** hearing in affording the probationer additional due process safeguards, specifically: (a) written notice of the claimed violations of [probation or] parole; (b) disclosure to the [probationer or] parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a neutral and detached hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking [probation or] parole.

Further, we note that there is a lesser burden of proof in a ***Gagnon II*** hearing than in a criminal trial because the focus of a violation hearing is whether the conduct of the probationer indicates that the probation has proven to be an effective vehicle

- 4 -

to accomplish rehabilitation and a sufficient deterrent against future antisocial conduct. Thus, the Commonwealth need only prove a violation of probation by a preponderance of the evidence.

***Commonwealth v. Allshouse***, 969 A.2d 1236, 1240-41 (Pa. Super. 2009) (some citations and quotation marks omitted). Lastly, a claim that the evidence was insufficient to sustain revocation is

> a question of law subject to plenary review. We must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, when viewed in the light most favorable to the Commonwealth as the verdict winner, is sufficient to support all elements of the offenses. A reviewing court may not weigh the evidence or substitute its judgment for that of the trial court.

***Commonwealth v. Perrault***, 930 A.2d 553, 558 (Pa. Super. 2007), *appeal denied*, 945 A.2d 169 (Pa. 2008) (citation omitted).

In ***Bearden v. Georgia***, 461 U.S. 660 (1983), the Supreme Court of the United States held that a revocation court may not revoke a term of probation for the probationer's failure to pay fines absent certain considerations. Specifically, the High Court provided the following:

> We hold, therefore, that in revocation proceedings for failure to pay a fine or restitution, a sentencing court must inquire into the reasons for the failure to pay. If the probationer willfully refused to pay or failed to make sufficient *bona fide* efforts legally to acquire the resources to pay, the court may revoke probation and sentence the defendant to imprisonment within the authorized range of its sentencing authority. If the probationer could not pay despite sufficient *bona fide* efforts to acquire the resources to do so, the court must consider alternate measures of punishment other than imprisonment. Only if alternate measures are not adequate to meet the [s]tate's interests in punishment and deterrence may the court imprison a probationer who has made sufficient bona fide efforts to pay. To do otherwise would deprive the probationer of his conditional freedom simply because,

through no fault of his own, he cannot pay the fine. Such a deprivation would be contrary to the fundamental fairness required by the Fourteenth Amendment.

*Id.* at 672 (footnote omitted). We have stated that this means that a revocation court must inquire into the reasons for a probationer's failure to pay and to make findings pertaining to the willfulness of his omission. *See Commonwealth v. Dorsey*, 476 A.2d 1308, 1312 (Pa. Super. 1984).

> A proper analysis should include an inquiry into the reasons surrounding the probationer's failure to pay, followed by a determination of whether the probationer made a willful choice not to pay, as prescribed by *Dorsey*. After making those determinations, if the court finds the probationer "could not pay despite sufficient *bona fide* efforts to acquire the resources to do so," the court should then consider alternatives to incarceration in accordance with *Bearden*, [*supra* at 672].

*Commonwealth v. Eggers*, 742 A.2d 174, 176 (Pa. Super. 1999).

Our review of the record in this case shows that the trial court conducted a sufficient inquiry into Appellant's ability to pay restitution. At the revocation hearing, Appellant was thoroughly questioned on his finances. (*See* N.T. Revocation Hearing, 6/12/17, at 3-7). Appellant did not contest that, in the almost three years between sentencing and the revocation hearing, Appellant had made a single payment of $105.00 towards restitution. (*See id.* at 2). While Appellant claimed to be disabled and unable to work, he also admitted to working "odd jobs." (*Id.* at 4). Also, during this period, Appellant continued to smoke cigarettes, and the trial court did not credit his statement that he only smoked a pack and one-half a week. (*See id.* at 3-4, 6; Trial. Ct. Op., at 2). Moreover, despite Appellant's claims of poverty, he voluntarily

- 6 -

took custody of four children of a friend and now supports them. (**See** N.T. Revocation Hearing, at 4-5; Trial Ct. Op., at 2). Therefore, the trial court concluded that Appellant made "conscious choices to spend his money in a way that left nothing for his victim." (Trial Ct. Op., at 2). Further, despite this finding, the trial court, in accordance with **Bearden**, **supra**, did not imprison Appellant, but instead **lowered** his monthly payment obligation and extended the period of probation. Thus, we conclude that, because the record fails to show that Appellant made any *bona fide* efforts to pay restitution and, instead, made deliberate choices to spend his money in other ways, the trial court did not err in revoking Appellant's probation. **See Bearden**, **supra** at 672; **Cf Eggers**, **supra** at 176 (finding that trial court had not complied with **Bearden** where it made no inquiry into ability to pay and imprisoned probationer despite evidence that Department of Welfare was deducting restitution payments from welfare check and during periods of employment probationer made regular additional payments). Appellant's first claim lacks merit.

In his second issue, Appellant challenges the discretionary aspects of his sentence.[1] (**See** Appellant's Brief, at 18-20). In **Commonwealth v.**

---

[1] We note that Appellant preserved his discretionary aspects of sentence claim by filing a timely post-sentence motion for reconsideration of sentence. (**See** Post-Sentence Motion, 6/22/17, at unnumbered page 5); **see also McAfee**, **infra** at 275.

*Cartrette*, 83 A.3d 1030 (Pa. Super. 2013) (*en banc*), this Court held that "[our] scope of review in an appeal from a revocation sentencing includes discretionary sentencing challenges." *Cartrette*, *supra* at 1034. Thus, Appellant's claim is properly before us.

The right to appeal the discretionary aspects of a sentence is not absolute. *See Commonwealth v. McAfee*, 849 A.2d 270, 274 (Pa. Super. 2004), *appeal denied*, 860 A.2d 122 (Pa. 2004). When an appellant challenges the discretionary aspects of the sentence imposed, he must present "a substantial question as to the appropriateness of the sentence[.]" *Commonwealth v. Anderson*, 830 A.2d 1013, 1017 (Pa. Super. 2003) (citations omitted). An appellant must, pursuant to Pennsylvania Rule of Appellate Procedure 2119(f), articulate "a colorable argument that the sentence violates a particular provision of the Sentencing Code or is contrary to the fundamental norms underlying the sentencing scheme." *Commonwealth v. Kimbrough*, 872 A.2d 1244, 1263 (Pa. Super. 2005) (*en banc*), *appeal denied*, 887 A.2d 1240 (Pa. 2005) (citation omitted). If an appellant's Rule 2119(f) statement meets these prerequisites, we determine whether a substantial question exists. *See Commonwealth v. Goggins*, 748 A.2d 721, 727 (Pa. Super. 2000) (*en banc*), *appeal denied*, 759 A.2d 920 (Pa. 2000). "Our inquiry must focus on the **reasons** for which the appeal is sought, in contrast to the **facts** underlying the appeal, which are necessary only to decide the appeal on the merits." *Id.* (emphases in original). [T]he

imposition of sentence following the revocation of probation is vested within the sound discretion of the trial court, which, absent an abuse of that discretion, will not be disturbed on appeal. . . . ***Commonwealth v. Edwards***, 71 A.3d 323, 327 (Pa. Super. 2013), *appeal denied*, 81 A.3d 75 (Pa. 2013) (citations omitted).

In the instant matter, Appellant has failed to make any argument that the extension of his probationary sentence "violate[d] a particular provision of the Sentencing Code or is contrary to the fundamental norms underlying the sentencing scheme." ***Kimbrough***, ***supra*** at 1263. In his post-sentence motion, Appellant merely stated that "it would be fundamentally unfair for [him] to remain under county supervision indefinitely simply due to his status as an indigent and disabled individual." (Post-Sentence Motion, at unnumbered page 5). In his Rule 2119(f) statement, Appellant simply quotes general boilerplate law on the discretionary aspects of sentence but at no point cites to any particular provision of the sentencing code violated by the sentence. (***See*** Appellant's Brief, at 9-10). Thus, we find that Appellant has failed to articulate a substantial question that his sentence violated the sentencing scheme. ***See Kimbrough***, ***supra*** at 1263. Appellant's second claim lacks merit.

Accordingly, for the reasons discussed above, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>04/24/18</u>